Filed 4/20/15  In re Isabelle P. CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re ISABELLE P. et al., Persons Coming Under the Juvenile Court Law. | |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | B258340 (Los Angeles County Super. Ct. No. CK98775) |
| Plaintiff and Respondent, | |
| v. | |
| E.P., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Zeke D. Zeidler, Judge.  Affirmed.

Anne E. Fragasso, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the County Counsel, Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel and Jessica S. Mitchell, Deputy County Counsel, for Plaintiff and Respondent.

Appellant E.P. (Father) appeals the July 29, 2014 order terminating parental rights over his two daughters under Welfare and Institutions Code section 366.26.[1] This is Father's second appeal. The first was from the court's February 2014 order placing the girls with nonrelatives. At that time, Father claimed his trial counsel was ineffective for failing to object to the order and for failing to join the paternal grandparents' contemporaneous section 388 petition seeking custody. We held the issues raised were forfeited on the merits, and that Father had failed to demonstrate that his counsel's performance was deficient or that he had suffered prejudice. In the current appeal, Father again asserts that he received inadequate representation, and further contends that the brief filed in the earlier appeal questioning counsel's adequacy created an irreconcilable conflict that required substitution of counsel prior to the section 366.26 hearing. For the reasons set forth below, we reject Father's contentions and affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Prior Proceedings*

In August 2012, sisters Isabelle P. and A.P., age four and 19 months, were detained from their parents by the Orange County Social Services Agency after the Agency received reports of Mother's hospitalization due to drug abuse. The dependency proceeding was filed in Orange County. The parties stipulated to jurisdiction under section 300, subdivision (b) (failure to protect).[2]

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

[2]     Jurisdiction was based on the following factual allegations: Mother had a history of substance abuse and an ongoing substance abuse problem; Mother was hospitalized in August 2012 after using drugs; Mother had been unconscious due to drug or alcohol use while in the presence of the children on more than one occasion; Mother slapped Isabelle, leaving a mark on her face; Mother engaged in multiple acts of domestic violence with the maternal grandmother in the children's presence; Father did not have appropriate
*(Fn. continued on next page.)*

Father's reunification services included individual therapy, parenting education, a substance abuse program, and substance abuse testing. During the initial reunification period, Father made no attempt to comply with the case plan or keep in contact with the caseworker. His reunification services were terminated at the April 2013 review hearing.[3]

At the time of the detention, the children were living with the maternal grandmother and visiting the paternal "grandparents," Virginia L. and Emilio M., one or two days per week.[4] They had only limited contact with Father. In September 2012, after a short period in a foster home, the children were placed in the paternal grandparents' home. On May 2, 2013, shortly before the matter was transferred to Los Angeles County where Mother was in a residential drug treatment program, the girls were removed from the home of the paternal grandparents, after they violated court orders by allowing Father to reside with them and the children. The children were placed with a maternal great-aunt, Renee H.

Because Renee did not wish to adopt, the court instructed the Department of Children and Family Services (DCFS) to find a prospective adoptive home for the girls. By October 2013, DCFS had identified the F.'s, a family living in Utah, who had been recommended by Mother's family. The F.'s traveled to California, met with the caseworker and the girls, and expressed their desire to adopt. In January

housing and was unable to assume custody of the children; and Father had been arrested and deported for possession of marijuana. The caseworker had also received information that Father had had a sexual relationship with a 13-year old when he was in his 20's.

[3] The reunification period continued for Mother. In September 2013, Father met with the caseworker to ask about participating in services and visitation, but there is no evidence that he substantially complied with any portion of the program.

[4] Emilio is not biologically related to the children or married to Virginia.

2014, DCFS filed an application seeking placement of the girls with the F.'s. The hearing on the application took place February 21, 2014. On that same date, the paternal grandparents filed a petition for modification under section 388, seeking return of the girls to their custody and stating they were willing to adopt. Father did not join in the petition, which was summarily denied on February 25. At the custody hearing on February 21, Father's counsel stated that Father desired additional visitation, but raised no objection to the proposed placement with the F.'s.[5] The court ordered the children placed with the F.'s.

Father appealed the court's placement order, contending on appeal that he received ineffective assistance of counsel when his attorney failed to join in the grandparents' section 388 petition and failed to object at the February 2014 hearing to placing the children with the F.'s. By opinion dated November 10, 2014, this court concluded Father had forfeited any objection to the placement order. We further concluded that he failed to establish ineffective assistance of counsel because he presented no evidence that he had communicated to his attorney any objection to the proposed placement. Moreover, we found no basis to believe that raising an objection on Father's behalf would have resulted in a different outcome, given that the children's attorney, Mother and DCFS were united in recommending that the children be placed with the F.'s.

---

[5]     At the time, Father was visiting once a month for an hour and a half.

B. *Termination of Mother's Reunification Services and Section 366.26 Hearing*

In April 2014, while the appeal was pending, the 18-month review hearing took place. The caseworker reported that twice in November 2013 and once in January 2014 Father had tested positive for cannabinoids. In addition, he had failed to report for 11 scheduled drug tests. In March 2014, Father sent an email to the caseworker questioning why he should participate in testing, parenting education and counseling services in view of the fact his children had been removed "with out his will." He presented no proof of enrollment in parenting education or individual counseling. The caseworker had attempted to facilitate regular telephone calls between Father and the girls, but had been unable to do so because Father had failed to respond to the caseworker's telephone calls and emails. At the April 3, 2014 review hearing, the court terminated reunification services for Mother and set a section 366.26 hearing to consider termination of parental rights.[6]

In July 2014, the caseworker reported that Father had been calling the girls weekly, primarily speaking to Isabelle as A.P. was still quite young (three years old). The report stated that the grandparents on both sides of the family were seeking custody, but that a change in placement would be unwise, because the girls had already been subjected to several moves in their short lives and were in grave need of stability. They were "settled and adjusted to [the F.'s]," who had an approved home study and were able to proceed with adoption. The report further stated that the girls were bonded to the F.'s and called them "mom and dad."

---

[6] Mother was enrolled in inpatient rehabilitation, but was unlikely to complete it before the end of 2014, more than two years from the date the children were detained. Father did not appear at the hearing. His attorney's request for a continuance was denied.

Isabella was doing well in school. She stated she wanted to continue to live with the F.'s and wanted them to become her parents. A.P. was too young to make a statement, but was doing well in the F.'s home and was reportedly forming a strong attachment to one of her foster sisters.

At the July 29, 2014 hearing, DCFS recommended termination of parental rights and initiation of an ICPC (Interstate Compact for the Placement of Children) adoptive home study. Mother submitted on the recommendation. Her counsel stated that Mother believed the F.'s to be "excellent [caretakers]." Counsel for the children joined in the recommendation. Father's counsel stated that Father was opposed to termination of parental rights and believed that if the girls were to be made available for adoption, it should be by the paternal grandparents. The court found that the girls were likely to be adopted and terminated parental rights. Father appealed.

## DISCUSSION

Father, whose brief was submitted before we issued our prior opinion, again contends that trial counsel provided ineffective assistance by failing to object to the February 21, 2014 order placing the girls with the F.'s or to join in the paternal grandparents' section 388 petition for modification. We have rejected that contention. (*In re Isabelle P*. (November 10, 2014, B255409) 2014 Cal.App. Unpub. LEXIS 8032, *7-*12.) He further contends after he filed his opening brief in the prior appeal accusing counsel of inadequacy, an actual conflict existed, and counsel should have withdrawn and permitted substitute counsel to be appointed. He is mistaken.

There is no dispute that indigent parents in dependency proceedings are entitled to appointed counsel and that appointed counsel must be competent. (§§ 317, 317.5, subd. (a); *In re Kristin H*. (1996) 46 Cal.App.4th 1635, 1642; *In re*

*M.P.* (2013) 217 Cal.App.4th 441, 454.) The right to the assistance of counsel includes "the correlative right to representation free from any conflict of interest that undermines counsel's loyalty to his or her client." (*People v. Doolin* (2009) 45 Cal.4th 390, 417.) However, the mere accusation of ineffectiveness or incompetence does not give rise to an irreconcilable conflict requiring substitution of counsel. As our Supreme Court explained in *People v. Smith* (1993) 6 Cal.4th 684, although an attorney is placed in an "awkward position" when the client claims he or she was ineffective, an indigent person for whom counsel has been appointed cannot obtain substitute counsel "on demand" simply by asserting that the appointed attorney is inadequate. (*Id*. at p. 694.) "[A] defendant may not force the substitution of counsel by his own conduct that manufactures a conflict." (*Id*. at p. 696.) Instead, new counsel is substituted on a proper showing to the trial court that "the first appointed attorney is not providing adequate representation or that the defendant and the attorney have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result . . . ." (*Id*. at p. 696.)[7] When the issue of conflict of interest is raised for the first time on appeal, the appellant must show (1) counsel's deficient performance resulting from the conflict, and (2) a reasonable probability that, absent counsel's deficiencies, the result of the proceeding would have been different. (*People v. Doolin*, *supra*, 45 Cal.4th at pp. 417, 421.)[8]

---

[7] Rule 5.660(e) of the California Rules of Court requires superior courts to implement procedures to review and resolve complaints by parents regarding the performance of appointed attorneys. (See *In re M.P*., *supra*, 217 Cal.App.4th at p. 454.) The record reflects no such complaint by Father.

[8] Father's reliance on *People v. Bailey* (1992) 9 Cal.App.4th 1252 is misplaced. The court in *Bailey* disapproved the practice of appointed trial counsel continuing to represent the same party on appeal because it placed the attorney in the "untenable
*(Fn. continued on next page.)*

Father identifies nothing in the record demonstrating inadequate representation at the final hearing or a reasonable probability of a different result had he been represented by other counsel. His brief does not address the merits of the court's determination to terminate parental rights. He does not claim the children were unadoptable or that any of the statutory exceptions to termination of parental rights existed. (See § 366.26, subds. (c)(1)(B)(i), (c)(1)(B)(iv), & (c)(2)(A).) The facts do not support a finding that the children were not adoptable or that an exception to termination existed: the F.'s and others were clearly willing to adopt the girls, Father had failed to regularly visit them throughout the proceedings, and he had never been a consistent presence in their lives. There is nothing in this record to indicate either that the performance of Father's counsel was deficient or that had other counsel represented Father at the section 366.26 hearing, the result would have been different. In sum, Father has failed to establish either deficient performance or prejudice.

---

position of urging his own incompetency." (*Id*. at p. 1255.) Father's trial counsel was never placed in that position.

## DISPOSITION

The order terminating parental rights is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


MANELLA, J.


We concur:


WILLHITE, Acting P. J.


COLLINS, J.